IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| RON LESLIE, | ) | |
| Plaintiff, | ) | CIVIL ACTION NO. |
| | ) | _____ |
| MID AMERICA APARTMENT | ) | |
| COMMUNITIES, INC., | ) | |
| Defendant | ) | |

## COMPLAINT

Comes now, Ron Leslie, Plaintiff and respectfully shows as follows:

1.

This is an action for legal and equitable relief to redress discrimination in housing on the basis of disability. This action arises under The Fair Housing Act, 42 U.S.C. § 3601, et seq.

2.

This Court has jurisdiction of this action under 28 U.S.C. § 1343 and 28 § U.S.C. § 1331.

3.

Plaintiff, is a natural person with disabilities as defined in 42 U.S.C. § 3662(h), whose disability substantially limits one or more major life activities. Specifically, he suffers from several medical disabilities _inter alia_ which impact

1

his ability to care for himself, to perform manual tasks, to see, to hear, to eat, sleep, walk, stand, or lift.

4.

Plaintiff, is a natural person with disabilities as defined in 42 U.S.C. § 3662(h), whose disabilities impair his ability to complete tasks and meetings by telephone. Communications by mail or email are requested.

5.

Plaintiff is a natural person living in Georgia who attempted to rent an apartment from the Defendant for personal, family, and household purposes. This apartment is located at High Rise at Post Alexander, 600 Phipps Boulevard, Atlanta, Ga 30326.

6.

Defendant is a foreign limited liability company, regularly doing business in the Northern District of Georgia. This Defendant's registered agent is located in Gwinnett County, and is subject to the jurisdiction of this Court. At the time of filing this complaint, Defendant was the owner of High Rise at Post Alexander. They can be served by serving CT Corporation System at 289 Culver St. ,Lawrenceville, Ga 30046-4805.

7.

Defendant knew and knows of Plaintiff's disabilities as Plaintiff has made the same known to the agents of the Defendant.

8.

Defendant took the adverse action set out in paragraph 11 to 35 below and 38-57.

9.

The actions of the Defendant as set forth herein violated 42 U.S.C. § 3604(f)(l)(B).

10.

On June 4, 2020 Plaintiff visited Post Alexander tour an apartment. An agent of Defendant, Brittany Richards showed Plaintiff Unit #2509 and offered him eight weeks' free rent if he applied in June 2020.

11.

On June 8, 2020 Plaintiff applied for unit # 2509 through Ms. Richards.

12.

On or around June 10, 2020 Plaintiff attempted to contact Defendant but could not reach anyone. He emailed Ms. Richards and discovered that his application had been applied to a different unit. This unit was not available in

August 2020. Plaintiff submitted a request to correct the error and put him back to the original unit.

13.

On June 10, 2020 he again applied to Defendants as required by an agent of Defendant, Lyana Hollard. The fax was confirmed.

14.

On June 11, 2020 Plaintiff faxed an employment offer letter to Defendant as requested by Lisa Hubbard, an agent of Defendant.

15.

On June 12, 2020 Plaintiff visited the High Rise to lease an alternative unit #2508 which would be available in June 2020. He requested a reasonable accommodation to move in on June 30, 2020. He requested communication by email to accommodate his disability.

16.

On June 12, 2020 Defendant ran Plaintiff's credit without authorization. His identity was stolen and exchanged on a black market website.

17.

On June 14, 2020 Plaintiff received confirmation he would receive an offer of 2 months free rent for unit #2508. He confirmed his move in date of June 30, 2022.

18.

On June 16, 2020 Defendant confirmed his ID verification had been received and that he had been approved for an apartment #2508.

19.

On June 16, 2020 Defendant through its agent Ms. Wells requested Plaintiff's move in date, although the move in date of June 30, 2020 had already been confirmed. Plaintiff informed her that his grandmother had just died and he would be unable to communicate with Defendant during the period of her funeral arrangement.

20.

On June 17, 2020 Defendant through Ms. Wells changed his move in date to June 26, 2020, which was too early to accommodate his disabilities and allow him to move out of his current lease.

21.

On June 17, 2020 Defendant through Ms. Wells regarding documents for his application, notwithstanding that Plaintiff had already submitted such documents and had already been approved for his unit.

22.

The same day, Ms. Wells requested two pay stubs notwithstanding the fact that Defendant had already confirmed the income verification.

23.

Defendant received the fax confirmation for income verification and Plaintiff's request for accommodation. Ms. Wells told Plaintiff he would have to be screened again, and for the third time he was requested to lift the security freeze on his credit report.

24.

On June 23, 2020 Plaintiff contracted Experian to lift the security freeze on his Credit rights. He contacted Defendant to inform them.

25.

The next day he contacted Defendant again but could not reach anyone. Yet on June 25, 2020, Defendant through Ms. Wells again requested that Plaintiff lift the security freeze.

26.

On June 25, 2020 less than 15 hours before Plaintiff was scheduled to move into #2508,Defendant cancelled his application via email.

27.

Although Plaintiff tried to contact Defendant's agent, Ms. Wells, he was unable to do so.

28.

On June 25, 2020 Plaintiff immediately responded to Ms. Wells' requesting the name and email address of a Property Manager that could help him. Defendant never responded.

29.

Defendant by and through its agents refused to honor the bonafide offer of a 14 month lease agreement including a move in special of 2 months off that was made to him. Plaintiff was damaged in the amount of $3,610, as this will not be an offer that he will have at another apartment community he finds.

30.

Defendant refused to disclose apartment availability, or any services or promotions regarding alternative lease terms which were being offered to other prospective applicants and current tenants.

31.

Plaintiff has a disability which makes him unable to reliably attend scheduled meetings outside his home. Traveling outside his home to attend meetings worsens his symptoms.

32.

If Defendant hadn't cancelled his application unjustly, Plaintiff would have been able to fulfill the then current lease requirement and move out by June 30, 2020. Because of this, Plaintiff had been damaged in the amount of $21,367.50.

33.

Because the Plaintiff's apartment was preleased, and he could not physically move out timely because of his disability. Plaintiff is now responsible for this new tenant's lease according to the agreement.

34.

On February 26, 2020, Plaintiff submitted a new application for Apartment #2616 located at MAA Lenox 600 Phipps Blvd. Atlanta, GA 30326. MAA Lenox is formerly known as the High Rise at Post Alexander.

35.

On February 26, 2022 Plaintiff received a confirmation email regarding his new account with MAA Lenox.

36.

On March 1, 2022 Plaintiff attempted to finalize his application online for Apartment 2616. He received a confirmation email.

37.

On March 3, 2022, Plaintiff visited the property to view Apartment 2616, and to finalize his application. He met with Defendant's agent Daisha Arledge. He identified himself as a person with a disability, and requested a reasonable accommodation for more time to complete application requirements. She confirmed Apartment 2616 was available, and she led him to believe the unit was already reserved under his name online. She agreed to call him with a time to view the unit. However, she never called.

38.

On March 4, 2022, since Plaintiff hadn't heard from Ms. Arledge, he sent her an email to confirm his reservation for apartment 2616. She responded alleging that she was waiting to hear from maintenance. She admitted the apartment 2616 was available to him with a one month free special. She did not request any additional payments, any additional documents, nor did she disclose that there were any additional requirements to reserve the unit 2616.

39.

On March 6, 2022, Plaintiff logged into his MAA Lenox online account to find that his name had been removed from apartment 2616. However, the apartment was still available for rent to new applicants. Plaintiff then applied for Apartment 2616 on the MAA Lenox website again to confirm the unit was

reserved. He received a confirmation email for the reservation and a receipt for his payment.

40.

The next day when Plaintiff logged into his MAA Lenox online account he found that his name was removed from apartment 2616 yet again. He emailed Ms. Arledge requesting to correct this error; however, he never received a response.

41.

On March 8, 2022, Plaintiff received a hostile phone call from a leasing manager named Vaugnya threatening to cancel his application. Plaintiff pleaded with her not to cancel his application. Plaintiff requested a reasonable accommodation for more time to complete his application requirements for apartment 2616. However, she removed him from apartment 2616.

42.

On March 9, 2020 Plaintiff visited the property to confirm his reservation of Apartment 2616. He met with Defendant's agent Marcus Hill. He admitted that his name had been removed from Apartment 2616 by leasing manager Vaugnya, and that the apartment was given to another applicant. However, "since that applicant didn't qualify", Mr. Hill put the reservation for Apartment 2616 back under Plaintiff's name.

43.

On March 11, 2022, Plaintiff sent an email to Defendant confirming his move in date of March 25, 2022. She requested verification of Plaintiff's ID and his income by March 12, 2022 at 12 noon.

44.

On March 12, 2022, Plaintiff emailed Ms. Arledge the requested verification documents prior to noon as requested. Plaintiff submitted a request for a reasonable accommodation. Ms. Arledge did not respond to Plaintiff's request.

45.

On March 17, 2022 Defendant cancelled his application.

46.

On March 17, 2022 Plaintiff visited MAA Lenox to re-apply for a reservation for apartment 2616 yet again. He met with assistant property manager Mailyah Jordan. He identified himself as a person with a disability, and requested a reasonable accommodation for more time to complete application requirements. She told Plaintiff he had never responded to his leasing agent via email. This was untrue. She requested to run his credit for a 3rd time, even though Plaintiff was already approved. Plaintiff's credit score was 836 at the time Ms. Jordan pulled Plaintiff's credit, and once again, Plaintiff was approved for Apartment 2616 with no deposit required. Plaintiff submitted his driver's license, US passport, and Social Security Card to her in person. Nevertheless, she submitted an ID

verification through a third-party company without Plaintiff's consent. Once Plaintiff's ID was confirmed for a 3rd time, Ms. Jordan asked Plaintiff for 6 months of bank statements. He faxed 6 months of bank statements before the office closed as requested.

47.

On May 18, 2022, Ms. Jordan asked Plaintiff to upload the bank statements to a third-party website called SNAPPT for authentication. Plaintiff identified himself as a person who was a victim of identity theft previously. Afterwards, Plaintiff attempted to upload the requested documents to SNAPPT, however, Plaintiff kept receiving error messages.

48.

On May 19, 2022, Plaintiff attempted to call assistant manager Maliyah Jordan at (404) 841-0872 to request help submitting the requested bank statements online. However, she was not available.

49.

On May 21, 2022, Plaintiff emailed assistant manager Maliyah Jordan requesting help submitting the required statements online. In response, she denied Plaintiff's request for a reasonable accommodation, and she cancelled Plaintiff's reservation application for apartment 2616.

50.

Plaintiff's lease was scheduled to end on March 28, 2022. Because Defendant cancelled his application, Plaintiff was not able to move out. As a result, Plaintiff incurred fees which include hold over fees, month to month lease fees.

51.

Defendant by and through its agents refused to honor the bonafide offer of a 14 month lease agreement including a move in special of 1 month off that was made to him. This offer damages Plaintiff in the amount of $2,685.00, as this will not be an offer that he will have at another apartment community he finds.

52.

Defendant has refused to disclose apartment availability, or any services or promotions regarding alternative lease terms which are being offered to other prospective applicants and current tenants.

53.

Plaintiff had an obligation to his current landlord to move out of his current apartment as of lease end. This move out was planned by March 28, 2022 as his current apartment had been "pre-leased" to a future tenant.

54.

According to this lease, since holding over has occurred, the Plaintiff is required to pay 25% over the existing rent, and is liable for all rent for the full term

of the previously signed lease contract of the new resident who can't occupy because of the hold over.

55.

If the Defendant hadn't cancelled his application unjustly, Plaintiff would have been able to fulfill his current lease requirement and move out by March 28, 2022. Because of this, Plaintiff has been damaged in the amount of $35,112.00.

56.

Because the Plaintiff's apartment is pre-leased, and he can not physically move out timely because of his disability, he is now responsible for this new tenant's lease according to the agreement.

57.

Defendant violated 42 U.S.C. § 3604(f)(2) as set out herein by placing conditions on Plaintiff solely because of his disabilities that were not placed on other residents.

58.

Plaintiff at numerous times requested accommodations for his disability.

59.

These requests for reasonable accommodations would not have imposed a financial or administrative burden on the Defendant.

60.

Each of the requested accommodations was necessary to afford the Plaintiff an opportunity to use and enjoy living in the apartment complex.

61.

At all times Defendant refused to make the accommodation.

62.

Defendant took adverse action against him because of such disabilities.

63.

As a proximate result of Defendant's actions, Plaintiff was damaged in the Amounts as set out above plus $150,000 in emotional distress damages.

64.

The actions of Defendant were taken in reckless disregard of Plaintiff's rights under 42 USC § 3604 (f)(1) and Defendant is liable in the amount of $100,000 in punitive damages pursuant to 42 USC § 3613 (c)(1).

65.

Plaintiff is entitled to reasonable attorney's fees.

WHEREFORE Plaintiff prays,

1. For damages as set out above;
2. For punitive damages of $100,000;
3. For attorney's fees;
4. For jury trial;
5. For such other and further relief as is just and proper.

          Respectfully submitted,

          /s/ Ralph Goldberg

          Ralph Goldberg

          Georgia Bar No. 299475

          Attorney for Plaintiff

**Goldberg & Cuvillier, P.C.**

3469 Lawrenceville Hwy., Suite 102

Tucker, GA 30084

(770) 670-7343

(770) 670-7344 FAX

attorneygoldberg@hotmail.com